UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OCTAVIA C.,                                )
                                           )
            Plaintiff,                     )       No. 23-cv-2295
                                           )
      v.                                   )
                                           )       Magistrate Judge Keri L. Holleb Hotaling
MARTIN J. O'MALLEY, Commissioner           )
of the Social Security Administration,     )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Octavia C.[1] appeals the denial of her applications for disability benefits by the Commissioner ("Commissioner") of the Social Security Administration ("SSA"). For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 17)[2] is GRANTED, and Defendant's motion for summary judgment (Dkt. 21) is DENIED. The Commissioner's decision is reversed. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff seeks review of the denial of her January 8, 2019 applications for supplemental security income and disability and disability insurance benefits, in which she alleged disability beginning on September 1, 2017. (Administrative Record ("R.") 399-410.) Following denial of her applications at the initial and reconsideration levels and an ensuing Administrative Hearing

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s). In citing to items in the docket, the Court refers to the stamped numbers at the top of the pages rather than bottom-of-the-page numbering.

[2]    The Court construes Plaintiff's Brief in Support of Reversing the Decision of the Commissioner (Dkt. 17) as a motion for summary judgment.

that was continued multiple times (R. 46-133), an Administrative Law Judge ("ALJ") issued a July 25, 2022 decision finding Plaintiff not disabled. (R. 20-34.) On January 10, 2023, the Appeals Counsel denied Plaintiff's request for review (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g).

### B.       Social Security Regulations and Standard of Review

Pursuant to the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled, an ALJ applies a sequential five-step test. *See* 20 C.F.R. § 416.920(a)(4).

Judicial review of the ALJ's factual determinations is confined to ensuring they are supported by substantial evidence. *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citation omitted); *see also* 42 U.S.C. § 405(g). Although ALJs "are subject to only the most minimal of articulation requirements," *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024), they nevertheless must "articulate at some minimal level their analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (cleaned up). The ALJ need not "address every piece of evidence or testimony presented but must provide a logical bridge between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Martinez*, 71 F.4th at 1080 (cleaned up).

### C.       The ALJ's Decision

Plaintiff, whose age classifies her as a "younger person" under the regulations, alleges disability stemming, in part, from a learning disability, her inability to spell, and that she "can barely read." (*See* R. 403.) She reported to the ALJ that her brother spoke with her about her file because she "could barely read," and she testified she cannot even read street signs. (R. 79, 64,

23.) Plaintiff's brother testified Plaintiff had not filled out her own Function Reports but had her sister's help. (R. 28.) The ALJ further detailed that Plaintiff had an Individualized Education Plan while in school (apparently more than twenty years ago), with "all . . . classes in a special education classroom," but the plan indicated Plaintiff's failure to take school seriously and chronic truancy impacted her progress. (R. 29.) During multiple psychiatric consultations between 2010 and 2019, examiners reported that Plaintiff appeared not to be putting forth her best effort (they also described her efforts as "minimal" and "questionable"). (R. 29, 536-39, 2064-67.) Thus, although Plaintiff in 2010 registered a Full Scale IQ of 42, within the mild mental retardation range, the evaluator did not think the results were "valid and reflective of [her] cognitive abilities." (R. 29, 536-39, 2064-67.)[3] At both the initial and reconsideration levels, the state agency consultants noted Plaintiff's frequent uncooperativeness and low effort in prior evaluations, yet opined Plaintiff would be limited to unskilled work and "low stress simple and routine unskilled vocational activities of 1-2 steps." (R. 148, 149, 158, 165, 166, 191-192, 193, 207, 215, 216.) The ALJ found that Plaintiff's learning disorder was a severe impairment.[4] (R. 23.)

The ALJ concluded that Plaintiff had "the residual functional capacity [("RFC")] to perform light work with some exertional, postural, and environmental limitations, so long as she was limited to "simple, routine, and repetitive tasks; no strict production rate requirements; only simple work related decisions; few, if any, work-place changes; *and only work that can be demonstrated with no written instructions*." (R. 27 (emphasis added).) The ALJ determined Plaintiff had no past relevant work, but, following the testimony of a Vocational Expert ("VE"), and considering Plaintiff's age, education, work experience, and RFC, determined Plaintiff would

---

[3]  Plaintiff answered math problems incorrectly, could not identify five large cities, or the current date or President, "gave up quickly" when asked to count by sevens and interpret pronouns, and volunteered answers of just a few words to most questions. (R. 2064-67.)

[4]  The ALJ also found that Plaintiff had severe impairments of obesity, asthma, dilated cardiomyopathy, hypertension, gastroesophageal reflux disease, and dysthymic disorder. (R. 23.)

be able to meet the requirements of three occupations that exist in significant numbers in the national economy: (1) Housekeeping Cleaner (DOT 323.687-014)—approximately 118,000 positions nationwide; (2) Cafeteria Attendant (DOT 311.677-010)—about 90,000 positions nationwide; and (3) Garment Sorter (DOT 222.687-014)--about 25,000 positions nationwide. (R. 32, 33-34.) The ALJ therefore found Plaintiff was not disabled. (R. 34.)

## II.    ANALYSIS

Plaintiff argues in part[5] that Defendant did not carry its burden to show Plaintiff could perform the three jobs identified by the ALJ—Housekeeping Cleaner, Cafeteria Attendant, and Garment Sorter—because Plaintiff asserted she can neither read nor spell, and the Dictionary of Occupational Titles ("DOT") lists each position as Language: Level 1, which requires the employee to "[r]ead at a rate of 95-120 words per minute" and "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words." DOT §§ 323.687-014, 311.677-010, 222.687-014 (listing each position as L1), and App'x C (listing "Components of Definition Trailer"). (*See* Dkt. 17 at 12-13.)

Defendant counters that, although Plaintiff received special education services while in school, Plaintiff did not receive "services in the area of language arts/English" and "was not meeting benchmarks due to chronic truancy"; she also at one time "had a driver's license." (Dkt. 22 at 10.) Defendant faults Plaintiff for "cit[ing] no medical evidence corroborating" her inability to read and asserts "[n]o rule or regulation required the ALJ to perform a separate analysis for each of [P]laintiff's many statements." (*Id.*) Defendant therefore concludes "the ALJ properly rejected" Plaintiff's assertions of illiteracy, "did not ignore evidence supporting her allegation that she was not even capable of reading street signs," and properly limited Plaintiff to the three identified jobs, which could be learned through demonstration. (*Id.* at 9-11, 17-18.)

---

[5]    The Court declines to address other arguments Plaintiff raises because this issue is dispositive.

The Court disagrees. While the ALJ may not be obligated to address every facet of a claimant's arguments, the ALJ must consider a claimant's education level during Step 5 of the sequential analysis, and Defendant is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." 20 C.F.R. § 404.1560(b)(3), (c); 20 C.F.R. § 416.960(b)(3), (c). The number of years of formal schooling a claimant has completed often figures into the analysis of education level (there are four categories ranging from "Illiteracy" to "High school education and above") but is not conclusive. 20 C.F.R. §§ 404.1564(b), 416.964(b); Social Security Ruling ("SSR") 20-01p, *available at* https://www.ssa.gov/OP_Home/rulings/di/02/SSR2020-01-di-02.html (Apr. 27, 2020) ("Titles II and XVI: How We Determine an Individual's Education Category"). A person will be "consider[ed] [] illiterate if the person cannot read or write a simple message such as instructions or inventory lists," which is generally indicative of "little or no formal schooling," while a person is considered to have "marginal education" if the person has the "ability in reasoning, arithmetic, and language skills . . . to do simple, unskilled, types of jobs," usually coinciding with a sixth grade education level or lower. SSR 20-01p. As Plaintiff notes, though, even positions requiring the lowest level of language skills, L1, appear to require an ability to read thousands of two- and three-syllable words. (Dkt. 17 at 12-13); DOT §§ 323.687-014, 311.677-010, 222.687-014, App'x C.

Here, despite Plaintiff's repeated insistences she could not read, and specifically could not read street signs or the administrative record in this case, the ALJ did not determine Plaintiff's educational level or literacy but simply recited related testimony and noted school records and psychological consultations in which evaluators suggested Plaintiff was absent, uncooperative, or not demonstrating her full effort. (R. 28, 29, 32.) It may be, as Defendant suggests (Dkt. 22 at 9-11), the ALJ believed Plaintiff's literacy level was higher than she alleged and that she had not

proved illiteracy through her school records or otherwise,[6] but the ALJ did not make explicit findings, and the Court cannot presume, merely from those details, that the ALJ deemed Plaintiff literate or able to read sufficiently well to perform the identified occupations. *See Yourek v. Barnhart*, 334 F. Supp. 2d 1090, 1093 (N.D. Ill. Sept. 29, 2004) (finding details such as claimant's ability to read and write more than his name; years of schooling; completion of disability application; testimony claimant could read small words slowly; and obtaining a driver's license were "not inconsistent with a finding of literacy" but were also not "sufficient for such a finding once [claimant] raised the possibility of illiteracy"). The only clue the ALJ provided was in restricting Plaintiff to positions that could be learned through demonstration; that restriction, though, suggests the ALJ accepted, at least to a degree, Plaintiff's literacy limitations.

The Court simply cannot trace the ALJ's reasoning even so far as to determine what literacy he attributed to Plaintiff, much less how it specifically played into the assessed RFC upon which the VE was asked to testify, and the Court therefore cannot afford Plaintiff meaningful judicial review. Defendant's brief assumes literacy without addressing the consequences of illiteracy; the Court is left to presume illiteracy could impact the disability determination. *See Gonis*, 2012 WL 5964529, at *6 (explaining "[i]t certainly is not self-evident," given the description of L1 in the DOT, "that a person who was functionally illiterate or who read at a third grade level could do either [job identified by the VE with L1 requirements]" and "reject[ing] . . . argument that the failure to include functional illiteracy in the hypothetical question was not prejudicial"). Because

---

[6]   Notably, much of the evidence Defendant identified in his brief (like Plaintiff's previous licensure to drive) was not relied upon by the ALJ; even had it been, "a person does not have to be able to read and write . . . to pass the [driver's license] test." *Gonis v. Astrue*, No. 12-309-CJP, 2012 WL 5964529, at *6 (S.D. Ill. Nov. 28, 2012) (noting that ALJ erred in "rel[ying] on the fact that [plaintiff] had passed the drivers license test" because Illinois permits oral examinations for such tests and ALJ had not inquired how plaintiff passed the test) (citing 92 Ill. Adm. Code § 1030.80(e)). The ALJ did not find that or even mention whether Plaintiff required assistance with language arts. But, on the flip side, Plaintiff's school records include results of a speech-language assessment for "Listen Comp. . . . % = 3" and "Oral Expression . . . % = 9." (R. 525.) There is no explanation of those results, and the ALJ did not mention them.

Defendant bore the burden at Step 5, the Court remands for consideration of Plaintiff's literacy. *See id.* at *6 (noting that Commissioner's argument "that plaintiff has failed to show he was prejudiced by the omission of the specific factor of illiteracy because he ha[d] not shown that either of the jobs identified by the VE would require reading proficiency at a level higher than third grade . . . ignores the fact that, at step 5, *the Commissioner bears the burden of showing that there are a significant number of jobs in the economy that plaintiff is capable of performing*") (emphasis added); *see also Yourek*, 334 F. Supp. 2d at 1093 ("The ALJ had an obligation to develop a complete record once [claimant] had raised the issue of his potential illiteracy.").

The Court emphasizes, though, the limits of this opinion. The ALJ was not required to (and need not on remand) accept as true Plaintiff's allegations regarding her reading abilities; nor does the Court mean to suggest that Plaintiff should receive benefits if she is found to be illiterate as defined by agency materials. The Court merely cannot sufficiently assure itself from this record that Plaintiff could perform the cited jobs—in other words, Defendant did not carry his burden at Step 5. On remand, the ALJ must build a logical bridge between the evidence in the record and the ultimate conclusions, whatever they may be, on the issues pertinent to Plaintiff's disability determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 17) is granted, and the Commissioner's motion (Dkt. 21) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

ENTERED: November 4, 2024

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge